### UNITED STATES v. LIPKIS et al.

(District Court, S. D. New York. June 9, 1893.)

IMMIGRATION—POVERTY OF IMMIGRANT—LIABILITY TO BECOME PUBLIC CHARGE —BOND—FORFEITURE.

On the arrival of an immigrant woman in this country a bond was exacted by the government, conditioned that she or her children should not within five years become a public charge. Within six months she became insane, and was sent to the public asylum. *Held* that, while the insanity of the woman might not have been contemplated when the bond was taken, the evidence as to the poverty and inefficiency of her husband showed the liability of the family to become at any time a public charge, and as it was on that account that the bond was exacted, and for that reason that the woman became a public charge as soon as her derangement arose, *held*, that the government was entitled to judgment on the bond.

At Law. Action by the United States against Philip Lipkis and Herman Lapidus on an immigrant's bond. Judgment for plaintiff.

Edward Mitchell, U. S. Atty., and John O. Mott, Asst. U. S. Atty. Jacob Manheim, for defendant Lipkis. Rosenthal & Gretsch, for defendant Lapidus.

BROWN, District Judge. On the 27th of September, 1891, one Itte Raszban and her three children arrived as immigrants at the port of New York; and the superintendent of immigration, being satisfied that they were likely to become a public charge, required a bond which was executed by the defendants in the sum of $500, under the regulations of the secretary of the treasury, conditioned that neither the said Itte Raszban nor her three children should "become a public charge for support for a period of five years, upon any state of the United States, its territories, or the District of Columbia, or upon the city, town, township, county or any other municipality therein."

The evidence shows that the husband and father of the immigrants had been in this country about a year, and was earning more or less as a peddler in this city; and that he had two young children who also contributed to the support of the family. The evidence on this point rests mainly on the testimony of the husband himself. His evidence, however, has such inconsistencies, and in some portions is so lacking in probability and candor, that I am constrained to give it little weight as against the testimony of the officers, who testified to the extreme poverty of the appearance and surroundings of the family at their rooms.

I have no doubt of the authority of the superintendent of immigration to require a bond upon the landing of these immigrants, on the ground that from the poverty and character of the husband,

they were likely to become a public charge. About six months after the arrival of the mother she became insane, and was sent to the public insane asylum of the city under the direction of the commissioners of charities and correction, where only poor persons unable to pay for treatment are received, and she was there attended to for a considerable period at the expense of the municipality. The case, therefore, falls within the precise conditions of the bond; and the plaintiff is consequently entitled to judgment unless the public charge arose from some independent circumstances which cannot be deemed to have been contemplated or covered by the bond.

No doubt the illness, that is, the derangement of Mrs. Raszban, was not specifically contemplated at the time when the bond was taken; and if it appeared that the expenses to which the husband was thereby subjected were so extraordinary and so wholly out of any ordinary and reasonable provision for the future, it might, perhaps, be held that becoming a public charge in that way did not arise from the poverty of the immigrant or her family, but from an independent and extraordinary cause. When an able-bodied workman comes to the country, who is able to take care of himself and his family, and is likely to procure remunerative work in his trade, it is not the practice to require a bond from him merely because he may have but little ready money, and upon the mere possibility that he may meet with some accident that may make him a cripple and thus render him and his family a public charge. For at the time of arrival he is not likely to become a public charge; his health, capacity for work, and the probability that he will obtain work, furnish ordinary and sufficient security, in the ordinary course of things, against any such liability. Upon the whole testimony in this case, however, I cannot find that the circumstances of the husband were sufficient to afford any reasonable guaranty that the members of his family might not become a public charge under the ordinary liabilities to sickness, or as soon as any other additional charges arose beyond the barest needs of existence. His poverty and inefficiency are too plain. The liability of his family to become a public charge through any of the ordinary contingencies of life existed when the bond was taken, because of his poverty and inefficiency. It was on that account, no doubt, that the bond was required; and it was for that reason that his wife became a public charge as soon as her illness arose, and no effort to provide for her at his own expense was made. I must, therefore, allow judgment for the plaintiff, with costs.